# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TROY NORTON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NATIONWIDE CREDIT, INC., <br><br> Defendants. | Case No.: 18-cv-1999 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Troy Norton is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant Nationwide Credit, Inc. ("NCI") is a debt collection agency with its principal offices located at 1000 Abernathy Road, Suite 200, Atlanta, GA 30328

7. NCI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. NCI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. NCI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

10. On or about November 23, 2017, American Express mailed an account statement to Plaintiff regarding an alleged debt owed American Express, associated with a credit card account with an account number ending in 1007. A copy of this account statement is attached to this complaint as Exhibit A.

11. Upon information and belief, Exhibit A is a form account statement, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Exhibit A states:

| | |
|---|---|
| New Balance | $1,215.65 |
| Minimum Payment Due<br>Includes the past due amount of $264.00 | $346.00 |
| Payment Due Date | 12/18/17‡ |

2

13. Exhibit A states that, as of November 23, 2017, Plaintiff's account ending in 1007 had a "New Balance" of $1,215.65, with a "Payment Due Date" of December 18, 2017, and a "Minimum Payment Due" of $346.00.

14. On or about December 20, 2017 NCI mailed Plaintiff a debt collection letter regarding the same alleged debt owed to American Express, associated with a credit card account with an account number ending in 1007. A copy of this account statement is attached to this complaint as Exhibit B.

15. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by NCI to attempt to collect alleged debts.

17. Exhibit B was the first letter that NCI sent to Plaintiff with respect to Plaintiff's alleged American Express debt.

18. Exhibit B contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send debtors along with their initial communications:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or obtain a copy of a judgment against you and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

19. Exhibit B includes the following representation:

| ACCOUNT NUMBER: | ████1007 |
|---|---|
| NCI ID: | ████4386 |
| ACCOUNT BALANCE: | $1,215.65 |
| AMOUNT ENCLOSED: | |

3

20. Exhibit B also includes the following representation:



21. Exhibit B also states: "Your outstanding balance with the above referenced creditor is past due and has been referred to NCI Credit, Inc. for collection. The Account Balance as of the date of this letter is shown above."

22. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

23. On or about December 24, 2017, American Express mailed another account statement to Plaintiff regarding the same alleged debt owed American Express, associated with a credit card account with an account number ending in 1007. A copy of this account statement is attached to this complaint as Exhibit C.

24. Exhibit C states:

| New Balance | $1,275.10 |
| Minimum Payment Due | $430.00 |
| Includes the past due amount of $346.00 | |
| Payment Due Date | 01/18/18‡ |

25. Exhibit C states that, as of December 24, 2017, Plaintiff's account ending in 1007 had a "New Balance" of $1,275.10, with a "Payment Due Date" of January 18, 2018, and a "Minimum Payment Due" of $430.00.

26. Exhibit B is therefore false, deceptive, and misleading.

4

27. Exhibit B, mailed on December 20, 2017, just a few days before American Express mailed Exhibit C to Plaintiff, states the "Current Account Balance" but does not state that Plaintiff could return her account to a current status by making a minimum payment by January 18, 2018.

28. On or about January 21, 2018, NCI mailed Plaintiff another debt collection letter regarding the same alleged debt owed to American Express, associated with a credit card account with an account number ending in 1007. A copy of this account statement is attached to this complaint as Exhibit D.

29. Upon information and belief, Exhibit D is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

30. Upon information and belief, Exhibit D is another form debt collection letter, generated by computer, and used by NCI to attempt to collect alleged debts.

31. Exhibit D includes the following representation:



32. Exhibit D also includes the following representation:

```
NCI ID:        4386
Current Creditor: AMERICAN EXPRESS
Account Number:        1007
Account Balance: $1,313.10
Date: 01/21/2018
```

33. Exhibit D also states: "As you know, your account has been referred to us for collection with a total balance of $1,313.10."

5

34. Exhibit D, thus, represents that the debt had been accelerated and the full balance was due when Exhibit D was mailed.

35. On or about January 24, 2018, American Express mailed an account statement to Plaintiff regarding an alleged debt owed American Express, associated with a credit card account with an account number ending in 1007. A copy of this account statement is attached to this complaint as Exhibit E.

36. Exhibit E states:

| | |
|---|---|
| New Balance | $1,335.59 |
| Minimum Payment Due | $517.00 |
| Includes the past due amount of $430.00 | |
| Payment Due Date | 02/18/18‡ |

37. Exhibit E states that, as of January 24, 2018, Plaintiff's account ending in 1007 had a "New Balance" of $1,335.59, with a "Payment Due Date" of February 18, 2018, and a "Minimum Payment Due" of $517.00.

38. Exhibit D is therefore false, deceptive, and misleading.

39. Exhibit D, mailed on January 21, 2018, just a few days before American Express mailed Exhibit E to Plaintiff, states the "Current Account Balance" but does not state that Plaintiff could return her account to a current status by making a minimum payment by February 18, 2018.

40. On or about January 31, 2018, NCI mailed Plaintiff another debt collection letter regarding the same alleged debt owed to American Express, associated with a credit card account with an account number ending in 1007. A copy of this account statement is attached to this complaint as Exhibit F.

6

41. Upon information and belief, Exhibit F is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

42. Upon information and belief, Exhibit F is another form debt collection letter, generated by computer, and used by NCI to attempt to collect alleged debts.

43. Exhibit F includes the following representation:



44. Exhibit F also includes the following representation:

45. Exhibit F, thus, represents that the debt had been accelerated and the full balance was due when Exhibit F was mailed.

46. Exhibit F, mailed on January 31, 2018, just a few days after American Express mailed Exhibit E to Plaintiff, states the "Current Account Balance" but does not state that Plaintiff could return her account to a current status by making a minimum payment by February 18, 2018.

47. None of the collection letters NCI mailed to Plaintiff, Exhibits B, D, & F, include any reference to an amount owing to American express other than the total account balance.

48. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibits B, D, & F.

7

Exhibits B, D, & F state the "Current Account Balance" without stating an amount "due" while Exhibits A, C, & E seeks only a minimum payment. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' ").

49. NCI and American Express both represented the amount of the debt in a way that was confusing to the unsophisticated consumer and/or misrepresented the amount of the debt.

50. Upon information and belief, NCI and American Express work in a scripted process to collect American Express debts such as Plaintiff's.

51. Upon information and belief, NCI is fully aware of the contents and representations in Exhibits A, C, & E.

52. Upon information and belief, NCI is fully aware that American Express sends Exhibits A, C, & E to consumers with just a few days of the date NCI mails a letter in the form of Exhibits B, D, & F.

53. Upon information and belief, NCI is fully aware that its letter is sent during account billing cycles wherein American Express has sent a statement to consumers seeking a "minimum payment" and not representing that the entire balance is due.

54. Plaintiff was misled and confused by Exhibits A-F.

55. The unsophisticated consumer would be confused by Exhibits A-F.

### *The FDCPA*

56. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th

Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

57. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

58. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

59. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177

9

(W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

60. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in *Pogorzelski*, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

62. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

63. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

64. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

65. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

66. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

67. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

### The WCA

68. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

69. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

70. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

71. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin*

12

*Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

72. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

73. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

74. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

75. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

76. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

77. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

78. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

79. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## **COUNT I – FDCPA**

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Prior to sending <u>Exhibits B, D, & F</u>, NCI was aware that American Express was sending Plaintiff account statements stating Plaintiff's account had a "Minimum Payment Due," which was an amount less than the total balance of Plaintiffs account.

82. NCI represented to Plaintiff that Plaintiff's American Express account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

83. NCI misrepresented the amount, character, and legal status of the debt it was collecting.

14

84. NCI's attempts to collect the entire balance of class members' American Express accounts when only a portion of that balance was actually "due," were false, misleading and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

85. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT II -- WCA

86. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

87. Prior to sending Exhibits B, D, & F, NCI was aware that American Express was sending Plaintiff account statements stating Plaintiff's account had a "Minimum Payment Due," which was an amount less than the total balance of Plaintiffs all.

88. NCI represented to Plaintiff that Plaintiff's American Express account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

89. By attempting to collect an amount which was not yet due, Exhibits B, D, & F could reasonably be expected to harass Plaintiff.

90. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

91. Plaintiff brings this action on behalf of four classes:

92. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit B, (c) for an alleged debt owed to American Express and incurred for personal, family, or household purposes, (d) which was still subject to

15

late payment fees, (e) where the collection letter was sent between December 19, 2017 and December 19, 2018, (f) and such letters were not returned by the postal service.

93. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit D, (c) for an alleged debt owed to American Express and incurred for personal, family, or household purposes, (d) between December 19, 2017 and December 19, 2018, (e) that were not returned by the postal service.

94. Class III consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit F, (c) for an alleged debt owed to American Express and incurred for personal, family, or household purposes, (d) between December 19, 2017 and December 19, 2018, (e) that were not returned by the postal service.

95. Class IV consists of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters in the form of Exhibits B, D, & F, (c) for an alleged debt owed to American Express and incurred for personal, family, or household purposes, (d) where the final collection letter was sent between December 19, 2017 and December 19, 2018, (e) and such letters were not returned by the postal service.

96. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

97. There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits B, D and F violate the FDCPA and/or the WCA.

98. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

99. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

100. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

101. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: December 19, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

17