# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

TROY NORTON, Individually and on            CASE NO. 18-cv-1999
Behalf of All Others Similarly Situated,

       Plaintiff,

v.

NATIONWIDE CREDIT, INC.,

       Defendant.
_____/

## MOTION OF DEFENDANT NATIONWIDE CREDIT, INC. TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Nationwide Credit, Inc. ("NCI"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the Complaint filed by plaintiff Troy Norton ("Plaintiff") for purported violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA"), and the Wisconsin Consumer Act, Wisconsin Statutes Ch. 421-427 (the "WCA"). In support thereof, NCI states as follows:

### I.     INTRODUCTION

Plaintiff's entire Complaint rests on a single faulty premise: NCI allegedly violated the FDCPA and WCA by sending Plaintiff letters regarding his delinquent American Express credit card account that accurately state, and request payment of, the entire card account balance rather than only the "Minimum Payment Due" reflected in the parallel periodic account statements sent by non-party American Express National Bank ("American Express"). Neither the FDCPA nor the WCA, however, requires NCI to either notify Plaintiff of American Express's minimum payment due or only seek to collect that amount. Rather, NCI's letters clearly and accurately

state the amount of Plaintiff's debt to American Express, which is the same amount reflected in American Express's corresponding periodic account statements Plaintiff incorporated into the Complaint. Thus, it cannot be said that NCI used any false, deceptive, misleading, unfair or unconscionable means to collect Plaintiff's debt nor misrepresented the amount, character or legal status of Plaintiff's debt in violation of the FDCPA. Accordingly, Count I for violation of the FDCPA fails and should be dismissed.

Count II likewise fails to state a claim under the WCA because NCI's debt collection letters were not harassing and could not reasonably be expected to harass Plaintiff by stating Plaintiff's full balance rather than only the minimum payment due to avoid fees from American Express. The fact remains that Plaintiff owed the full balance, which he does not dispute.

For the foregoing reasons, as further detailed below, this Court should dismiss both counts of the Complaint without leave to amend.

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that, on November 23, 2017, American Express mailed him a periodic Account statement (the "November Statement") for his American Express account ending in 1007 (the "Account"). (Compl. ¶ 10.) The November Statement reflected a $1,215.65 "New Balance" and a "Minimum Payment Due" of $346.00, noting the December 18, 2017 "Payment Due Date." (Id. ¶¶ 12-13 & Ex. A.) Just under a month later, on December 20, 2017, NCI mailed Plaintiff a letter regarding Plaintiff's past-due Account balance (the "December Letter"). (Id. ¶ 14.) The December Letter accurately stated that Plaintiff's "outstanding balance with [American Express] is past due and has been referred to [NCI] for collection. The Account Balance as of the date of this letter is shown above [$1,215.65]." (Id. ¶¶ 20-21 & Ex. B.)

On December 24, 2017, American Express mailed Plaintiff another periodic Account statement (the "December Statement"). (Id. ¶ 23.) The December Statement reflected a

$1,275.10 "New Balance" with a "Minimum Payment Due" of $430.00, noting the January 18, 2018 "Payment Due Date." (Id. ¶¶ 24-25 & Ex. C.) Just under one month thereafter, on January 21, 2018, NCI mailed Plaintiff another letter regarding Plaintiff's past-due Account balance (the "January 21 Letter"). (Id. ¶ 28.) The January 21 Letter accurately requested payment of Plaintiff's $1,313.10 Account balance (which includes a $38.00 "late payment fee" American Express assessed on January 18, 2018). (Id. ¶¶ 31-33 & Exs. D, E.)

On January 24, 2018, American Express mailed Plaintiff a third periodic Account statement (the "January Statement"). (Id. ¶ 35.) The January Statement reflected a $1,335.59 "New Balance" and a "Minimum Payment Due" of $517.00, noting the February 18, 2018 "Payment Due Date." (Id. ¶¶ 36-37 & Ex. E.) As before, on January 31, 2018, NCI sent Plaintiff another letter regarding Plaintiff's past-due Account balance (the "January 31 Letter"). (Id. ¶ 40.) Once again, the January 31 Letter accurately told Plaintiff that, "[a]s of the date of this letter, you owe $1,335.59." (Id. ¶¶ 43-44, 46 & Ex. F.)

Plaintiff alleges that the December Letter, the January 21 Letter and the January 31 Letter (collectively, the "Letters") all: (1) "represented that the debt had been accelerated and the full balance was due" when each was mailed (id. ¶¶ 22, 34, 45); (2) do "not state that Plaintiff could return her [sic] account to a current status by making a minimum payment by" the dates indicated in the respective American Express periodic statements (id. ¶¶ 27, 39, 46); and (3) fail to "include any reference to an amount owing to American [E]xpress other than the total [A]ccount balance" (id. ¶ 47). According to Plaintiff, an "unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of" the Letters because the Letters "state the 'Current Account Balance' without stating

an amount 'due' while [the parallel American Express periodic Account statements] seek[] only a minimum payment." (Id. ¶ 48.)

Based on the foregoing, Plaintiff contends that the Letters "misrepresented the amount, character, and legal status of the debt" because NCI sought to collect the balance owed on the Account and not simply the "amount actually due" -- i.e., the "Minimum Payment Due" reflected in American Express's periodic Account statements. (Id. ¶¶ 82-83.) Plaintiff further alleges that NCI made "false, misleading, and confusing representations" to Plaintiff and the putative class that were "unfair and unconscionable" by seeking to collect the "entire balance" owed and not simply a "portion of [the] balance that was actually 'due.'" (Id. ¶ 84.) According to Plaintiff, the Letters "could reasonably be expected to harass Plaintiff" because the Letters sought to collect the entire Account balance when such amount "was not yet due." (Id. ¶¶ 87-89.)

Plaintiff asserts two counts against NCI: (1) violation of sections 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1) of the FDCPA (Count I); and (2) violation of sections 427.104(1)(g), 427.104(1)(h), 427.104(1)(j) and 427.104(1)(L) of the WCA (Count II). Plaintiff brings these claims on behalf of himself and purportedly on behalf of a class of similarly situated persons in Wisconsin to whom NCI sent collection letters on American Express's behalf substantially in the form of those it sent to Plaintiff. (Id. ¶¶ 1, 91-100.)

### III. ARGUMENT

**A. Standard On A Motion To Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

In this Circuit, courts must engage in a two-part analysis when determining the sufficiency of a complaint. See McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011). First, "the court must 'accept the well-pleaded facts in the complaint as true' while separating out 'legal conclusions and conclusory allegations merely reciting the elements of the claim.'" Borucki v. Vision Fin. Corp., 18-cv-386, 2013 WL 2477067, at *2 (E.D. Wis. June 7, 2013) (citation omitted). Second, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" Id. (citation omitted). In making these assessments, documents attached to a complaint are considered part of the complaint and may be considered on a motion to dismiss. Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]e have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider . . . documents that are attached to the complaint, documents that are central to the complaint and referred to in it . . . .").

Applying these standards to the Complaint's allegations and the exhibits attached thereto, Plaintiff fails to state any claim against NCI, and it therefore should be dismissed with prejudice.

**B.     Plaintiff's FDCPA Claim Fails As A Matter Of Law Because The Letters Are Not Misleading Or Deceptive.**

Dismissal of an FDCPA claim alleging receipt of deceptive or misleading collection letters "is appropriate as a matter of law when it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.'" Zemeckis v. Global Credit & Collection Corp., 679 F.3d 632, 636 (7th Cir. 2012) (citation omitted). As explained below,

- 5 -
MIA 31419137

Count I cannot survive because the Letters are not misleading to the unsophisticated consumer and should be dismissed.[1]

### 1. The Letters Accurately State The Amount Of The Debt.

Plaintiff alleges that the NCI violated sections 1692e, 1692f, and 1692g of the FDCPA. In the Seventh Circuit, "the inquiry under §§ 1692e, 1692g and 1692f is basically the same": the court asks how an objective "unsophisticated consumer" would perceive the letter. McMillan v. Collection Professionals Inc., 455 F.3d 754, 759 (7th Cir. 2006). Although the unsophisticated consumer may be "uninformed, naive, [and] trusting," Veach v. Sheeks, 316 F.3d 690, 693 (7th Cir. 2003), "she has 'rudimentary knowledge about the financial world' and is 'capable of making basic logical deductions and inferences.'" Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 645 (7th Cir. 2009) (quoting Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1060 (7th Cir. 2000)). Of course, courts should "disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 414 (7th Cir. 2005); Gruber v. Creditors' Protection Serv., Inc., 742 F.3d 271, 274 (7th Cir. 2014).

Courts analyzing complaints asserting a violation of all or a combination of sections 1692e, 1692f, and 1692g of the FDCPA have found it useful to start with analyzing the claim under section 1692g. See Mollberg v. Advanced Call Ctr. Techs. Inc., No. 18-CV-1210, 2019 WL 288128, at *2 (E.D. Wis. Jan. 22, 2019), reconsideration denied, No. 18-CV-1210, 2019 WL

---

[1] The statements at issue "plainly, [and] on their face, are not misleading or deceptive." See Ruth v. Triumph Partnerships, 577 F.3d 790, 800 (7th Cir. 2009) (holding that where statements in collection letters are plainly not misleading or deceptive, a court should grant dismissal based on its "own determination that the statement complied with the law"). Accordingly, this action is appropriate for disposition on a motion to dismiss despite the Seventh Circuit's general view that whether a collection letter is confusing is "a question of fact that, if well-pleaded" can avoid dismissal. See Zemeckis, 679 F.3d at 636 (internal citation omitted).

- 6 -

MIA 31419137

1376024 (E.D. Wis. Mar. 27, 2019). Section 1692g(a)(1) requires a debt collector to communicate the "amount of the debt." Section 1692(a)(6)(F)(iii) defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

Plaintiff does not allege that the Account Balance NCI noted in any of the Letters is inaccurate, nor could he. Instead, Plaintiff attempts to conflate the "amount of the debt" that must be disclosed pursuant to the FDCPA with the "Minimum Payment Due" American Express identified in its periodic Account statements. Plaintiff's argument, however, is at odds with the Seventh Circuit's interpretation of the statutory phrase "amount of the debt."

In Barnes v. Advanced Call Center Technologies, 493 F.3d 838, 840 (7th Cir. 2007), the Seventh Circuit held that "the amount of the debt," as that phrase is used in the FDCPA, refers to the amount that the debt collector is attempting to collect. Id. at 840. "[U]nder Barnes, the 'amount of the debt' that must be correctly stated . . . is the amount of the debt being sought by the debt collector, not the amount of the debt owed to the underlying creditor." Wahl v. Midland Credit Mgmt., Inc., No. 6-CV-1708, 2008 WL 149962, at *4 (N.D. Ill. 2008), aff'd 556 F.3d 643, 646-47 (7th Cir. 2009). The debt collector "must communicate the amount the creditor has authorized it to collect and it is attempting to collect, whatever that amount is." Mollberg, 2019 WL 288128, at *2. Moreover, "many cases support the proposition that a debt collector can collect amounts other than the past due amount." Id. at *3 (citing Hahn v. Triumph Partnerships, 557 F.3d 755, 756-57 (7th Cir. 2009), and Castro v. Green Tree Servicing LLC, 959 F. Supp. 2d 698 (S.D.N.Y. 2013)).

Applying these standards, this Court very recently rejected FDCPA claims remarkably similar to those Plaintiff asserts against NCI here. In Mollberg,[2] Magistrate Judge Nancy Joseph dismissed, with prejudice, claims that a debt collector had violated FDCPA sections 1692e, 1692f and 1692g by sending dunning letters which, as here, overlapped with the creditor's monthly account statements. See Mollberg, 2019 WL 288128, at *1. The debt collector's letters sought to collect not just the amounts past due listed on the creditor's statements, but also the monthly installment amounts which, according to plaintiff, were "not yet due, let alone overdue" at the time the debt collector sent the letter. Id. at *2. The letters lumped the past-due and monthly installment amounts into one, not separately itemizing them. Id. Rejecting plaintiff's contention that defendant could only collect the past-due amount, Judge Joseph held that, "according to the plain language of the FDCPA, 'debt' refers to the amount owed without regard to whether it is currently due or past due. Under the case law of the Seventh Circuit, the 'amount of the debt' is the amount the debt collector is authorized and attempting to collect in its letter." Id. at *4. Accordingly, Judge Joseph concluded that plaintiff had "failed to allege facts that [defendant] did not clearly and accurately state the amount of the debt under § 1692g(a)(1)." Id.

As with plaintiff's rejected contention in Mollberg, this Court should likewise reject Plaintiff's contention here that NCI somehow violated section 1692g(a)(1) of the FDCPA when it demanded in the Letters that Plaintiff pay the Account balance, an amount Plaintiff does not dispute that he owes, and not only the minimum payment due American Express identified in its periodic Account statements.

---

[2] Plaintiff's counsel in this case also represented plaintiff in Mollberg.

- 8 -
MIA 31419137

### 2. The Letters Are Not Deceptive, Misleading, Unfair Or Unconscionable Either.

Plaintiff's claims under sections 1692e and 1692f fare no better. "[W]hether the statement was misleading under § 1692e goes hand-in-hand with whether the amount of the debt has been accurately disclosed under § 1692g(a)(1)." Boucher v. Fin. Sys. of Green Bay, Inc., 880 F.3d 362, 371 (7th Cir. 2018). As demonstrated above, the Letters clearly and accurately state the "amount of the debt" in full compliance with section 1692g and the Seventh Circuit's interpretation of that statutory phrase.

Grasping for an argument that the Letters are misleading, Plaintiff espouses a "bizarre and idiosyncratic" reading of the Letters in conjunction with American Express's periodic Account statements and asserts that the Letters "represent[] that the debt had been accelerated and the full balance was due when" NCI mailed the Letters. (Id. ¶¶ 22, 34, 45.) The Letters make no such representations. In fact, accepting Plaintiff's claims would require the Court to read into the Letters the legal concept of debt acceleration that simply is not there. Accordingly, Plaintiff has not demonstrated, nor can he, that the Letters were false or misleading, and the Court should therefore dismiss Count I because "it is 'apparent from a reading of the [Letters] that not even a significant fraction of the population would be misled by [them].'" Zemeckis, 679 F.3d at 636.

### C. Plaintiff's WCA Claim Likewise Fails.

Similar to the FDCPA, the WCA's purpose is to "protect customers against unfair, deceptive, false, misleading, and unconscionable practices by merchants." Wis. Stat. § 421.102(2)(b). "'[I]nterpretations of the [WCA]' are to be coordinated 'with the policies of the federal consumer credit protection act,' specifically the FDCPA." Tylke v. Diversified Adjustment Serv., Inc., No. 14-CV-748, 2014 WL 5465173, at *3 (E.D. Wis. Oct. 28, 2014)

(quoting Brunton v. Nuvell Credit Corp., 325 Wis. 2d 135, 161 n.12 (Wis. 2010)). In Count II, Plaintiff contends that NCI violated sections 427.104(1)(g), 427.104(1)(h), 427.104(1)(j) and 427.104(1)(L) of the WCA, which prohibit the following practices by debt collectors:

> (g) Communicate with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer;
>
> (h) Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer;
>
> (j) Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist;
>
> (L) Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt.

While courts often "assume that the WCA claims sink or swim with the FDCPA claims" see Mollberg, 2019 WL 288128, at *6, Plaintiff's claims under the WCA fail for the additional reasons that Plaintiff nowhere alleges that (1) the Letters were so frequent as could reasonably be expected to harass Plaintiff, (2) the Letters contained any harassing or threatening language, nor (3) the Letters attempted to enforce a right that did not exist. See id. (rejecting identical WCA claim filed on behalf of a plaintiff represented by Plaintiff's counsel in this action). Accordingly, the Court should dismiss Plaintiff's WCA claims in Count II, with prejudice, as well.

**D.     The Court Should Dismiss The Complaint Without Leave To Amend.**

While the Seventh Circuit has stated its preference for allowing a plaintiff at least one opportunity to amend the original complaint if it is dismissed pursuant to Rule 12(b)(6), it has recognized that, in some instances, amendment is futile. Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana, 786 F.3d 510, 519 (7th Cir. 2015). Specifically, the Seventh Circuit has found that amendment is futile in cases where "it is clear that the defect cannot be corrected." Id. Like Judge Joseph concluded in Mollberg, it would be futile to allow Plaintiff to

- 10 -
MIA 31419137

amend the Complaint here to reassert claims under the FDCPA and WCA because the Letters will not change.  <u>Mollberg</u>, 2019 WL 288128, at *7.  Thus, this Court should dismiss the entire Complaint without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, NCI respectfully requests that this Court enter an Order granting this Motion in its entirety and dismissing the Complaint without leave to amend.

Dated:  May 10, 2019.

Respectfully submitted,

By: /s/ *Brian C. Frontino*
Brian C. Frontino
Florida Bar No. 95200
David D. Switzler
Florida Bar No. 93089
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone:  (305) 358-9900
Facsimile:  (305) 789-9302
bfrontino@stroock.com
dswitzler@stroock.com
lacalendar@stroock.com

Attorneys for Defendant
    *Nationwide Credit, Inc.*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the Court's CM/ECF system on the following counsel of record on May 10, 2019:

>John D. Blythin (SBN 1046105)
>Mark A. Eldridge (SBN 1089944)
>Jesse Fruchter (SBN 1097673)
>Ben J. Slatky (SBN 1106892)
>ADEMI & O'REILLY, LLP
>3620 East Layton Avenue
>Cudahy, WI 53110
>Telephone: (414) 482-8000
>Facsimile: (414) 482-8001
>jblythin@ademilaw.com
>meldridge@ademilaw.com
>jfruchter@ademilaw.com
>bslatky@ademilaw.com

*/s/ Brian C. Frontino*
Brian C. Frontino